UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| SANTA ESCOLASTICA, INC., | ) | |
| Plaintiff, | ) | No. 5:09-CV-358-KSF/REW |
| v. | ) | RECOMMENDED DISPOSITION |
| IGNACIO PAVLOVSKY, JR., | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral from District Judge Forester, *see* DE #17 (Order), considers the Motion to Dismiss of Defendant Ignacio Pavlovsky. *See* DE #6 (Motion to Dismiss for Lack of Jurisdiction). In this diversity case, Plaintiff Santa Escolastica, Inc. ("SEI") sued Pavlovsky asserting claims related to a horse brokering and breeding partnership between the parties that began around 1995. *See* DE #1 (Complaint) at ¶ 17. Defendant, a citizen of Argentina, moved to dismiss based on lack of personal jurisdiction. SEI, a Kentucky corporation, responded in opposition, and Defendant replied. *See* DE #7 (Response in Opposition); DE #16 (Reply). The District Judge perceived the need to resolve contested factual matters via an evidentiary hearing and referred the hearing and motion to the undersigned. The hearing occurred on July 14, 2010, *see* DE #25 (Transcript) ("Tr."), and the parties submitted post-hearing briefing on the distinct issue of personal intra-jurisdiction service. The matter now stands submitted.[1]

The parties agree that SEI personally served Pavlovsky, in this District, with a proper

---

[1] SEI, as the initiating party, has the burden of establishing jurisdiction. Because the Court resolved the matter through an evidentiary hearing, the proof standard is a preponderance of the evidence. *See American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

1

summons and complaint on November 10, 2009. Under *Burnham v. Superior Court*, 110 S. Ct. 2105 (1990), that service effected personal jurisdiction as a constitutional matter. Because the service otherwise comported with state and federal procedural rules, the Court has personal jurisdiction over Pavlovsky. Alternatively, SEI established that specific jurisdiction would be appropriate under Kentucky's long-arm statute and the familiar "minimum contacts" analysis. The Court thus recommends that the District Judge **DENY** the motion to dismiss.

## 1. *Burnham* is dispositive regarding personal jurisdiction.

SEI personally served Pavlovsky in Fayette County, Kentucky. *See* DE #4 (Summons); Tr. at 51 (admission by Defendant). Pavlovsky was voluntarily in this District attending the horse sales at Keeneland Race Course. *See* Tr. at 51. SEI served Defendant by personal delivery of process through a state constable. *See* DE #4.

Plaintiff's service method comported with the federal and borrowed state processes. Federal Rule 4(e) permits service on "an individual" by personal service. *See* Fed. R. Civ. P. 4(e)(2)(A) (endorsing delivery of summons and complaint "to the individual personally"). A proper state method also suffices. *See id.* at (e)(1) (borrowing state law method for "action brought in courts of general jurisdiction in the state where the district court is located"); *Holmes v. Gonzalez*, No. 1:09-CV-259, 2010 WL 1408436, at *3-4 (E.D. Tenn. Apr. 2, 2010) (slip copy) (noting Rule 4(e)(1) state-law method for effectuating service to be alternative to Rule 4(e)(2) authorized methods). Kentucky law likewise permits personal service. *See* Ky. R. Civ. P. 4.04(2). The question becomes whether that service fixed personal jurisdiction under

constitutional principles.[2]

*Burnham* clearly endorses the validity of jurisdiction via personal service. Though no majority opinion exists, nine Justices agreed in the case that personal service on a non-resident effected jurisdiction in California as to a cause of action *unrelated* to the non-resident's activities within the forum state.[3] Justice Scalia's four-Justice plurality assessed the historical underpinnings of jurisdiction and categorically opined: "The short of the matter is that jurisdiction based on physical presence alone constitutes due process[.]" *See Burnham*, 110 S. Ct. at 2115.

Justice Brennan also wrote for four.[4] He strongly, but not categorically, described personal service as presenting a constitutional basis for personal jurisdiction. The Brennan opinion characterized the "tag" service or transient jurisdiction concept as "entitled to a strong presumption that it comports with due process" because it aligns with the "reasonable expectations" of a defendant voluntarily found in a forum. *See id.* at 2124. The intentional appearance in a forum, thus permitting personal service, cuts against any notion of unfairness: "[A]s a rule the exercise of personal jurisdiction over a defendant based on his voluntary

---

[2] The Court thus rejects Defendant's arguments centered on Kentucky's long-arm statute, Kentucky Revised Statute § 454.210. The long-arm statute is a means of service under Kentucky law, but by its own terms it is nonexclusive. *See id.* at (5). The statute does not limit the jurisdictional reach of Kentucky, as a procedural matter, when "any other basis authorized" by Kentucky law exists. *See id.* Given the valid service routes under the federal and Kentucky rules, the analysis reduces into a singular assessment of due process. *See Doe v. Al Maktoum*, No. 07-293-KSF, 2008 WL 4965169, at * 3 (E.D. Ky. 2008) (Forester, J.) ("Kentucky courts exercise personal jurisdiction over non-residents 'to the full constitutional limits of due process,' and jurisdiction is not limited by the Kentucky long-arm statute[.]").

[3] Such was the very certiorari question addressed. *See Burnham*, 110 S. Ct. at 2109.

[4] Justice Stevens called the matter "a very easy case" and concurred in the judgment; he joined none of the other opinions.

presence in the forum will satisfy the requirements of due process." *See id.* at 2125.

Justice Scalia's analysis requires no assessment of reasonableness, but Justice Brennan's would preserve an "'independent inquiry into the . . . fairness of the prevailing in-state service rule.'" *See id.* at 2120 (citation omitted). That fairness inquiry, however, is hardly the full-fledged *International Shoe Co. v. Washington*, 66 S. Ct. 154 (1945), calculus. Rather, Justice Brennan suggests that the "outer limits of the transient jurisdiction rule" would concern "a defendant's involuntary or unknowing presence in a State[.]" *See id.* at 2124 n.11. Justice Brennan's holding reflects this postulated limitation: because, in *Burnham*, "it [was] undisputed that petitioner was served with process while voluntarily and knowingly in the State of California," Justice Brennan concurred in the judgment without further fairness or burden inquiry. *See id.* at 2126. Like the petitioner in *Burnham*, Pavlovsky was served while voluntarily in the forum, here in Kentucky to attend a horse sale in this District. Under either central theory announced in *Burnham*, jurisdiction would satisfy due process.

The defense rationally tries to distinguish Pavlovsky's situation because he is a foreign citizen. Based on statements in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 107 S. Ct. 1026 (1987),[5] Defendant argues that foreign defendants receive

---

[5] This language reads, in particular:

> In the present case, this advice calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the California court. The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the

additional protection (relative to burden, inconvenience) in the due process calculus. The Court questions the application of *Asahi* in the context of personal (versus long-arm) service.[6] The Scalia analysis ignores burden as a distinct consideration. Although the Brennan opinion does discuss convenience and "potential burdens," it also presumes from voluntary physical presence that burden "likely would not be prohibitively inconvenient." *See id.* at 2125.

Here, notably, Pavlovsky has voluntarily traveled to the United States eleven times in the last decade. *See* Tr. at 59. He has been to Kentucky eight times, both for repeated business purposes and for pleasure. *See id.* at 53 (indicating trip for honeymoon), 60. Finally, the Court observes that Pavlovsky has himself acted as a plaintiff in this jurisdiction, filing state litigation in Woodford County in 2005. *See* DE #13-3 at 6 (Woodford Circuit Court complaint). If Defendant can bear the choice to initiate litigation in this District, then, by definition and as confirmed by Pavlovsky's voluntary forum activities, litigation in this forum is not prohibitively

---

forum State.

*Asahi*, 107 S. Ct. at 1034.

[6] Cases under *Burnham* have not distinguished based on a defendant's alienage. *See, e.g.*, *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998) ("Nor does PW-UI command solicitude simply because it is an entity foreign to New York and the United States.") (citing *Kadic v. Karadzic*, 70 F.3d 232, 247 (2d Cir. 1995)); *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 846 (N.D. Ill. 2009) ("Since *Burnham* was decided, there does not appear to be a single published opinion in which a court has found jurisdiction lacking where an individual was served in the forum."). At best, courts may distinguish *Burnham* where an agent of the defendant, rather than the defendant himself or herself, accepts service of process. *See Conn v. Zakharov*, No. 1:09-CV-760, 2010 WL 1416977. at *4 (N.D. Ohio Apr. 5, 2010) (slip copy) (finding *Burnham* not to extend to facts where a "cleaning woman" hired by the defendant's property manager accepted service on a defendant's property, where defendant is a citizen of the Russian Federation but owns property in Ohio).

inconvenient.[7] Even if the due process component features a fairness query, the answer affirms personal jurisdiction.

SEI proved that it properly served Pavlovsky in person and in this District. That service comports with the applicable procedural rules and with the Constitution. The Court thus recommends denial of the motion to dismiss.[8]

### 2. Specific jurisdiction otherwise exists

Even if *Burnham* did not affirm jurisdiction, SEI properly proved specific jurisdiction under the familiar *International Shoe* formulation. In making this assessment, the Court

---

[7] Justice Brennan noted the incongruity of invalidating tag service: "Without transient jurisdiction, an asymmetry would arise: A transient would have the full benefit of the power of the forum State's courts as a plaintiff while retaining immunity from their authority as a defendant." *See Burnham*, 110 S. Ct. at 2125. Pavlovsky cannot credibly sue to enforce rights here but then complain that the burden of litigating here should, as a constitutional matter, spare him from jurisdiction as a defendant in this District

[8] Defendant argues waiver–*i.e.*, that SEI waived the *Burnham* argument by not making it sooner. It is true that SEI did not invoke *Burnham* until the day of the evidentiary hearing. However, Pavlovsky, having been served, was aware of the fact of personal service from case initiation. Further, the *Burnham* authority is twenty years old, and SEI did repeatedly reference personal service in the briefing. The Court set the matter for an evidentiary hearing, and the burden then fell to SEI to prove jurisdiction.
  The Court's focus is on getting the correct legal answer, and making an infirm constitutional decision based on a waiver argument is not appealing jurisprudence. The instant posture differs substantially from circumstances where waiver may apply for failure to brief personal jurisdiction objections thoroughly. *See, e.g.*, *Franklin v. Dometic Corp.*, No. 2:09-CV-268, 2010 WL 2342433 (E.D. Tenn. Jun. 7, 2010) (slip copy) (considering the issue of personal jurisdiction waived because of complete lack of argument).
  The lack of prejudice to Pavlovsky also is clear–he suffered no surprise of proof or law, and the Court granted (and Pavlovsky took) an opportunity at post-hearing briefing. No factual dispute exists relative to the service issue. Though *Burnham* may displace the core of the expected hearing grounds, it was Pavlovsky that initiated the dismissal motion and resulting legal proceedings. SEI should have made the argument earlier, but it did present the theory and proof as part of the evidentiary hearing devoted to whether jurisdiction exists. The Court rejects waiver as a reason to ignore the impact of *Burnham* in this case.

considered the briefing, the full evidentiary hearing, and the agreed record.[9]

SEI's complaint seeks to rescind and/or recover under a settlement agreement the parties entered that terminated all or part[10] of their twelve year equine partnership. *See* DE #1 at ¶¶ 114-20. Relatedly, the complaint asserts generic fraud and breach of fiduciary duty claims as to the accounting and transactional specifics related to dozens of horses. SEI apparently alleges that Pavlovsky acted improperly with respect to expenses, profits, and reimbursements in the parties' partnership, centering on ownership and transfer of multiple horses or seasons. *See id.* at ¶¶ 121-33.

The horse breeding/brokering relationship between the parties began in 1995 and ran consistently through at least 2007. The parties agree that the relationship focused on shuttling horses to Argentina (as owners or brokers) for breeding and on acquiring bloodstock for use in Argentina or for Argentine clients. An Argentine nexus plainly exists, but Kentucky also had a close connection to the relationship. SEI is a Kentucky corporation owned and operated by Jose DeCamargo, and SEI has conducted a farming operation exclusively in Kentucky during the entirety of the partnership. *See* Tr. at 14-15. Pavlovsky knew these connections. *See id.* at 73. SEI regularly purchased horses in Kentucky (at Keeneland, Fasig Tipton, or privately) to be

---

[9] Both sides submitted affidavits and documents in advance of the hearing. Both agreed that the Court could properly consider the filings as part of the evidentiary record in the case. As such, the Court has carefully assessed each document and affidavit, in addition to the hearing exhibits and the testimony. Jose DeCamargo (SEI's sole owner) and Ignacio Pavlovsky each testified.

[10] The scope is in dispute–Defendant claims the release was global; SEI claims the release resolved only the parties' broodmare operation. *See* Tr. at 40. The Garat Agreement carries significant Argentine marks, but Plaintiff seeks in part to set that agreement aside and return to the status quo.

7

owned by SEI and Pavlovsky. These purchases occurred with Defendant's knowledge, advice, and consent. *See id.* at 42-43, 62-63.

Defendant averred that his business partner was the **individual** Jose DeCamargo, not the entity SEI. *See* DE #6-3 at ¶ 10 ("I have never entered into any agreement with SEI, formal or informal. My business arrangement has always been with DeCamargo individually."). However, the record convincingly shows that Pavlovsky partnered with SEI itself. Indeed, Pavlovsky utilized SEI credit in the purchase of horses. *See* Tr. at 21. SEI contracted for insurance on horses owned by the partnership, and SEI boarded horses to benefit the partnership for periods throughout the lengthy association. *See, e.g.*, *id.* at 22, 49; DE #9, at 6-44 (documentation of bills and reimbursements). Pavlovsky reimbursed SEI for his fractional part of such costs. Many of the horse purchases occurred in Kentucky, and SEI regularly boarded partnership horses in the Commonwealth at least during the required 30-day quarantine period preliminary to export. Again, Pavlovsky reimbursed SEI his proportional share of such expenses by payment made to SEI in Kentucky. *See* Tr. at 49 (discussing boarding), 72 (discussing payment mechanics).

Pavlovsky and SEI shared numerous commissions generated from activities in Kentucky. Thus, when SEI acted for the partnership at the Keeneland sales, the actions often generated sales or other brokering commissions that benefitted Pavlovsky. *See* Tr. at 22-24. SEI's Kentucky presence was strategic. DeCamargo described Kentucky as the world's equine center, *id.* at 15, and Pavlovsky (who has attended the Keeneland sales and the Breeder's Cup races here) drew financial benefits from horse sales and breeding operations centered in the Commonwealth. SEI's location was integral, not random or fortuitous.

Pavlovsky and SEI also employed Kentucky law and Kentucky courts in furtherance of

their business together. The parties joined as plaintiffs in the earlier-cited Woodford Circuit Court case. *See* DE #13-3. Additionally, the parties each were privy to and part of contracts that incorporated Kentucky law. *See, e.g.*, DE #10 at 1-29 (various Orpen contracts); *id.* at 30 (Escoltada contract invoking Kentucky law and Kentucky forum). The parties advertised together both in the United States and in Argentina. *See* DE #21 (Plaintiff's Hearing Exhibits A-C). These ads had prominent Kentucky references. *See* Tr. at 31 (noting intentional reference to "doing business with shuttling stallions and farms in Kentucky").

Defendant's mischaracterizations about the role of SEI harm his credibility as a witness. He claimed under oath that he "never entered into any agreement with SEI, formal or informal." *See* DE #6-3 at ¶ 10; Tr. at 49 (describing relationship as "Not with a corporation"). The record is loaded with checks, invoices, and other papers documenting the relationship between Pavlovsky and SEI, the entity. *See* DE #9. SEI obviously acted as Pavlovsky's agent on many occasions. He admitted in testimony that he purchased via SEI's credit. *See* Tr. at 50 ("They were purchased through Santa Escolastica, correct."). In the Woodford filing, Defendant agreed that SEI acted "as the agent for its principal [Pavlovsky] and the buyer of the horse Miss Ojea." *See* DE #13-3 at ¶ 7. The advertisements put into the record show an SEI ad invoiced 50% to Pavlovsky and an Argentine ad identifying both Pavlovsky and SEI for "stallion shuttling." *See* DE #21.

Thus, to the extent the factual positions differ concerning the origination of the Pavlovsky-SEI partnership, the Court finds DeCamargo's testimony more credible. Per DeCamargo, Pavlovsky visited SEI's farm in 1995 and the parties' business relationship flowered from that point. *See* DE #1 at ¶¶ 9, 17; Tr. at 17, 42. Pavlovsky denies coming to

9

Kentucky (other than for his honeymoon) until 1997, and he further denies ever conducting business on his trips to SEI or to the state. *See* Tr. at 54, 57-58, 72. DeCamargo contradicts this description. *See id.* at 43. The Court finds that Pavlovsky did come to Kentucky in or around 1995 for the purpose of forming or at least furthering his nascent relationship with SEI.[11] The Court also finds that Pavlovsky's visits to Kentucky in the interim – when he came to the SEI farm and interacted with DeCamargo – did involve actions to foment the SEI/Pavlovsky business relationship.[12] Pavlovsky's intra-forum behavior played a significant role in the development of the partnership now at issue in the complaint.[13]

These evidentiary findings coalesce to establish specific jurisdiction.[14] The parties agree about the three components of the test:

---

[11] Undoubtedly, as the Leon affidavit and parties' testimony suggests, an Argentine trip by DeCamargo in 1994 may have preceded Pavlovsky's visit. *See* Tr. at 17, 57-58. The question is not whether Argentine ties exist, but instead whether actions in Kentucky are sufficient to warrant jurisdiction.

[12] Defendant studiously avoids testifying to any business activities in Kentucky. Again, this avoidance is not believable. Even his own second affidavit admitted that Pavlovsky's attendance at Keeneland sales "was to further my business in Argentina." *See* DE #16-2 at ¶ 5. Activity in Kentucky to further a business in Argentina is still business activity in Kentucky.

[13] As another example, DeCamargo described the detailed interaction between himself and Pavlovsky relative to the Keeneland sales: "At Keeneland, we shared information from the catalog. We discussed possibilities in prices, probable prices, and he has a limit of a budget, and we tried to accomplish most of the budget." Tr. at 43. Pavlovsky's direct input on the purchase side – activity occurring at a Kentucky event – causally led to horse acquisition and thus the eventual claims concerning dissolution of the partnership.

[14] Plaintiff does not seriously pursue a general jurisdiction theory. Defendant's actions relative to Kentucky, while recurring as to the SEI relationship, hardly would satisfy the extensive requirements for general jurisdiction (absent the personal service issue already discussed). *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868, 1872-74 (1984). The Court does not pursue a full analysis because of the alternative bases already discussed.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

The notion of purposeful availment seeks to avoid jurisdiction premised on random or fortuitous acts of a third party. A defendant's own conduct is at issue, and a defendant that creates "'continuing obligations' between himself and the residents of the forum" has availed himself of the privilege of forum involvement. *See Air Products*, 503 F.3d at 551. A singular contract alone may not suffice, but an on-going relationship, indicating repeated intentional activities directed toward the forum, meets this criterion. Defendant formed his relationship with a known Kentucky entity. The twelve-year relationship grew from contact in Kentucky, and the very business centered on trade in horses purchased at public and private sales in the Commonwealth. SEI's Kentucky presence was a key to the operation, offering local credit for purchases and then a site to board horses in transition. SEI, from Kentucky, procured insurance and other services for horses owned or held by the partnership. Pavlovsky, who has repeatedly traveled to the state for business and other purposes, intentionally engaged in an association with a strong and strategic Kentucky presence. He participated in partnership deals that used, benefitted from, and enforced Kentucky-law rights. During the quarantine period for purchased horses, Pavlovsky enjoyed the protection of Kentucky laws as to his assets, and he took (if needed) the protection of Kentucky law with respect to his purchase and sale obligations at

Keeneland or private deals. Defendant did purposefully avail himself of the privilege of engaging in business in this District.

The "arising from" prong reflects a more "lenient standard" than the verbiage might suggest. *See id.* at 553. Jurisdiction is proper if the causes of action involved were "'made possible by' or 'lie in the wake of' the defendant's contacts." *See id.* (citation omitted). In keeping with the lax standard, the claims "need not 'formally' arise from defendant's contacts." *See id.* (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). If the causes of action were "made possible by" the defendant's forum contacts, prong two exists.

Examples from the lengthy complaint demonstrate the propriety of jurisdiction under this prong. The parties shared rights to the horse Orpen for the southern hemisphere breeding season from 2004-2007. *See* DE #1 at ¶¶ 66-75; DE #10, at 1-29. DeCamargo negotiated the deals on behalf of SEI and Pavlovsky. *See* Tr. at 26. Those agreements all invoke and apply Kentucky law and choose a Kentucky forum for any dispute; SEI negotiated the deals in the Commonwealth. Accounting and financial transactions related to those activities are claims at issue in the case, and those claims only exist because Pavlovsky's Kentucky-based agent entered Kentucky contracts related to breeding rights to Orpen. More generally, the chain of events leading to SEI's complaint involves necessary Kentucky steps. Again, Defendant intentionally-partnered with SEI. But for the partnership's forum conduct (SEI's purchases, SEI's boarding of horses pre-transit, SEI's procurement of insurance), there would be no (or less) dissolution issues to be litigated. Pavlovsky authorized SEI's conduct specific to Kentucky, and the dispute now before the Court lies in the wake of that conduct.

Finally, the due process analysis requires an assessment of reasonableness. The forum

connection must be "substantial enough" to support jurisdiction as a matter of fairness. When factors one and two exist, an inference of reasonableness applies, and a defendant must make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Air Products*, 503 F.3d at 554 (quoting and citing *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2185 (1985)). The considerations include burden, forum and plaintiff interests, and the interests of the remaining jurisdiction. As noted, under *Asahi*, a foreign defendant receives some level of heightened consideration. *See Asahi*, 107 S. Ct. at 1034.

Litigation in Kentucky would burden Defendant to an extent. However, Pavlovsky willingly accepted the foreign forum burden when he pursued litigation in Woodford Circuit Court as a plaintiff. Further, many of Pavlovsky's contracts have included forum selection and choice of law clauses tied to the Commonwealth. *See* DE #10 at 1-29. Defendant has regularly traveled to the United States and to Kentucky, for business or otherwise. Kentucky's interest in the litigation – involving claims by a Kentucky entity as to rights involving horses purchased in Kentucky – is as strong as Argentina's would be. The practical problems of witness and language can be navigated, and both primary players speak excellent English, as the hearing record reflects. In short, Pavlovsky offers no compelling justification for denying jurisdiction under the reasonableness prong.

For all of these reasons, the Court finds that SEI has proven the propriety of specific jurisdiction over Pavlovsky in this case. As an alternative basis, the Court recommends that the District Judge **DENY** the motion to dismiss.

\* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics

concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 72(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 10th day of August, 2010.

Signed By:
*Robert E. Wier*
United States Magistrate Judge