UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-358-KSF

SANTA ESCOLASTICA, INC.                                                                                  PLAINTIFF

VS.                                     **OPINION AND ORDER**

IGNACIO PAVLOVSKY, JR.                                                     DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant, Dr. Ignacio Pavlovsky ("Pavlovsky"), for summary judgment [DE 46] and the cross-motion of Plaintiff Santa Escolastica, Inc. ("SEI") for partial summary judgment [DE 51]. For the reasons discussed below, both motions will be granted in part and denied in part.

I.     BACKGROUND

This case arises from the breakup of a thoroughbred horse investment relationship. The Defendant, Dr. Ignacio Pavlovsky, is a veterinarian who conducts thoroughbred breeding and racing operations in Argentina. Jose DeCamargo is a Brazilian citizen whose Kentucky corporation, SEI, invested with Pavlovsky for twelve years from 1995 to 2007 in thoroughbred horses in Argentina. [DE 46-1, pp. 1-2; DE 51-1, p. 1]. There was no written agreement between the parties regarding their business relationship, and they each conducted separate business transactions involving horses. [DE 53-1, pp. 17-18]. The parties ended most of their relationship on October 30, 2007 through mediation by a mutual friend in Argentina, Juan Garat, who reflected the parties' agreement for Pavlovsky to buy out SEI's interest in certain jointly owned horses in an email referred to as the "Garat Agreement." [DE 46-1, p. 2; DE 51-1, p. 2]. Under the Garat

Agreement, Pavlovsky was to buy out SEI's 50 percent interest in "the horses you have in partnership" for a total of $350,000 to be paid to SEI in four installments. [DE 51-5].

The primary dispute between the parties centers on which horses and what interests in horses were encompassed by the Garat Agreement and whether any additional funds, above and beyond the $350,000, are due to SEI. [DE 50, p. 2]. SEI claims the Garat Agreement is limited to SEI's "50 percent share in a band of broodmares, yearlings, and foals." [DE 1, ¶¶ 24-25]. SEI also references a list of horses[1] it provided Mr. Garat and argues that no other horses were considered as part of the agreement. [DE 51-1, p. 2]. Mr. Garat's deposition supports this interpretation.

> Q. When you spoke with Jose DeCamargo and Ignacio Pavlovsky, were there any other horses discussed other than the horses on the list?
>
> A. No, I was not aware of other horses and those were the horses I discussed with them.

[Garat Depo., DE 51-4, p. 3]. Without the list, however, the Court is not able to determine what limit SEI seeks to impose on the Garat Agreement and how that limit is disputed.

Dr. Pavlovsky, on the other hand, initially claimed that the Garat Agreement terminated the entire relationship between the parties. [DE 28, Answer ¶¶ 12-14; Counterclaim ¶ 3]. The dispute arose when SEI provided a receipt for the second Garat Agreement payment, but DeCamargo wrote limiting language on the receipt regarding the scope of the payment. [DE 53, p. 4]. Pavlovsky claimed SEI was trying to change the terms and refused to make the last two payments under the Garat Agreement, totaling $165,000, because of the dispute between the parties. [DE 28 ¶ 16]. In his summary judgment motion, Pavlovsky narrows his position and states the agreement was that "Pavlovsky would purchase all of SEI's interests in their jointly owned

---

[1] SEI frequently mentions this list and made it an exhibit to Mr. Garat's deposition, but the Court has not been able to find the list of horses in the record. Similarly, SEI makes many arguments with no citation to the record in support and frequently cites pages of Mr. DeCamargo's deposition that have not been filed in the record. Accordingly, this evidence cannot be considered.

broodmares, yearlings and foals for the sum of $350,000.00, to be paid in four installments." [DE 46-1, p. 2].

SEI brought this action to recover for breach of the Garat Agreement and for fraud and breach of fiduciary duty for Pavlovsky's alleged failure to disclose correct and accurate accounting information for various horses over the years. [DE 1]. Pavlovsky counterclaimed that SEI breached the Garat Agreement by denying that it resolved all claims between the parties and by asserting a continuing ownership interest in various horses. [DE 28, pp. 11-12]. Pavlovsky also contended that any claims regarding accountings during the business relationship are barred by promissory estoppel in that regular accountings were provided and that he relied on SEI's acceptance of the accountings before he made any payments to SEI. [DE 46-1, pp. 6-8].

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to

demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### B. The Garat Agreement

The parties now agree that the Garat Agreement encompasses "all of SEI's interest in the jointly owned broodmares, yearlings and foals." [DE 53-1, pp. 65, 69; DE 46-2, ¶¶ 11, 14]. Pavlovsky argues he has been ready and willing to make the two final payments, but DeCamargo insisted he still had some ownership interest in horses that were encompassed by the Garat Agreement. [DE 46-1, p. 5]. For example, SEI claims it is entitled to specific installment payments relating to the horses AUK, DANCHA GAUCHA and EL PAIMUN. [Complaint ¶¶ 58-60].[2] Dr. Pavlovsky claims these horses "were all yearlings at the time of the Garat Agreement. As such, they were necessarily included in the Garat Agreement." [DE 53-2 ¶ 8]. In response to Pavlovsky's motion for summary judgment, SEI admits that the Garat Agreement encompasses a sale of SEI's "interest in the broodmare band, foals and yearlings." [DE 50, p. 2]. Thus, while the parties agree on the scope of the Garat Agreement, neither party has identified the horses by name or otherwise demonstrated that they agree which horses or interests in horses are included in the phrase "the horses you have in partnership."[3] Under these circumstances, the Court finds that the Garat

---

[2] Pavlovsky claims SEI presented "no evidence as to the amounts it believes it is allegedly due through these installment payments." That is not true. The Verified Complaint is evidence. "[A]llegations in a verified complaint have the same force and effect as an affidavit in responding to a summary judgment motion." *Lavado v. Keohane,* 922 F.2d 601, 605 (6th Cir. 1993)

[3] One would think it should be easy to determine which horses were the broodmares, yearlings and foals jointly owned by the parties on October 30, 2007, but it apparently is not.

4

Agreement is ambiguous and subject to interpretation through extrinsic evidence. *See e.g. A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.*, 998 S.W.2d 505 (Ky. Ct. Ap. 1999).

SEI continues to rely on the "list" of horses it provided to Garat and that Garat said he considered, but that list has not been provided as evidence. [DE 50, p. 5]. Moreover, Pavlovsky claims he never saw the list and denies that it was the basis of the agreement. [Pavlovsky affidavit, DE 53-2, ¶ 6]. Accordingly, SEI's motion for summary judgment for breach of contract based on its list of horses will be denied.

SEI claims, additionally, that it and Pavlovsky also jointly owned "stallions, breeding rights, payments due on installment agreements for jointly owned horses that had been sold, foal sharing agreements, commission payments due and interests in racehorses." *Id.* SEI points to Pavlovsky's testimony that the parties agreed to treat the stallion shares separately and that they did not speak about horses that had been sold but on which all money had not been collected. [Pavlovsky Depo., DE 50-6 (Ex. F)]. In his brief, Dr. Pavlovsky admits there "were a few stallions that Pavlovsky and SEI owned with third parties which were not covered by the Garat Agreement." [DE 46-1, p. 5, n. 2]. He also admitted that their joint ownership interest in two racehorses, Candy Stripes and Twice Regal, were not part of the Garat Agreement. [Pavlovsky Depo., DE 50-9 (Ex. I)]. The record reflects that the parties' interest in the stallion Orpen was also excluded from the Garat Agreement, as they admit that the second payment to SEI included an additional $15,000 for a partial payment on Orpen. [DE 50, p. 8; Pavlovsky Depo., DE 50-13 (Ex. M)].

SEI has presented sufficient evidence to raise a genuine issue of material fact regarding which horses or interests in horses were resolved by the Garat Agreement and what interests in horses, if any, remain to be resolved. SEI has also raised a genuine issue of material fact regarding its claim of breach of fiduciary duty with respect to horses or interests in horses that were excluded from the Garat Agreement, but for which SEI has not been paid. Accordingly, Dr.

Pavlovsky's motion for summary judgment on the claims of breach of contract and breach of fiduciary duty will be denied.

### C. The Accountings Between the Parties

SEI relies on Garat's testimony that there was no review of accounts or accounting as part of the buyout negotiations. [DE 50, p. 5; DE 50-8, Garat Depo. (Ex. H)]. SEI claims fraud and beach of fiduciary duty on the part of Pavlovsky for failing to provide complete records and for not providing requested information. [DE 50, p. 9]. DeCamargo argues that he "continuously objected" to the accounting reports and sought more information from Pavlovsky. *Id.* However, the cited portion of his deposition does not support his argument. [DE 50-14 (Ex. N)]. Other portions of his deposition refute this claim. [DeCamargo Depo., pp. 58-60].

The parties do not dispute that, during their business relationship, Pavlovsky sent SEI monthly reports regarding expenses associated with their jointly owned horses. [Pavlovsky affidavit, DE 46-2, ¶ 6; DeCamargo Depo., DE 53-1, pp. 48-49, 54]. Similarly, SEI would send Pavlovsky monthly statements regarding expenses incurred in the United States, such as insurance. [DE 50-14, pp. 49-52]. DeCamargo reviewed the reports from Pavlovsky when he received them. [DE 53-1, p. 55]. DeCamargo claims he objected to various reports, but there is no supporting evidence in the record.[4] Moreover, DeCamargo testified that he and Pavlovsky "worked out all of their differences with regard to the reports." [DeCamargo Depo. pp. 58-60, DE 53-1]. Thereafter, Pavlovsky would credit or debit him. *Id.* at 59.

From one to three times a year, Pavlovsky sent SEI an accounting report summarizing their financial activity. DeCamargo acknowledged receiving these reports which he called the "credits or debits." *Id.* at 54. He further testified that when he objected to anything in any of the reports, they reached an agreement. *Id.* at 60. SEI does not offer any evidence to rebut Pavlovsky's

---

[4] SEI attaches two emails as evidence of these complaints, but the emails are incomplete and are not translated into English. [DE 50-15 (Ex. O)]. These documents do not satisfy Fed. R. Civ. P. 56 requirements and are not evidence of anything.

affidavit that "[a]t all times I made my books and records available to Mr. DeCamargo and he reviewed them on many occasions." [DE 46-2, ¶ 8]. SEI also does not rebut Dr. Pavlovsky's statement that "several times a year I would provide Mr. DeCamargo with an accounting and we would exchange money in accordance therewith. No money ever exchanged hands without Mr. DeCamargo reviewing and approving all of the reports and accountings." *Id.* at ¶ 7.

Dr. Pavlovsky relies on equitable estoppel in defense of SEI's claims of fraud and breach of fiduciary duty. In support, he cites *Hazard Coal Corp. v. Kentucky West Virginia Gas Co., L.L.C.*, 311 F.3d 733 (6th Cir. 2002). In that case, Hazard Coal argued that the oil and gas leases to Kentucky West did not authorize it to transport gas owned by a sister corporation across land where Hazard Coal owned the mineral rights. The court found that Hazard Coal had notice for years that the affiliate was transporting gas across the property and made no objection. Hazard Coal also affirmatively entered into agreements with the sister corporation. The court held "this situation presents a classic case of waiver by acquiescence" and that "[a]cquiescence may serve as a basis for asserting the defense of estoppel." *Id.* at 740. The court quoted from Pomeroy as follows:

> When a party with full knowledge, or at least with sufficient notice of means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject matter under the belief that the transaction has been recognized or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence and the transaction, although originally impeachable, becomes unimpeachable in equity....

*Id.* at 740-41, quoting J Pomeroy, 2 Equity Jurisprudence § 965, at p. 2094 (5th ed. 1941). *See also Carter v. Tucker*, 205 Ky. 438, 266 S.W.9, 11 (1924) ("It is a well-settled principle that a partner in possession of all the facts, and who remains silent through a transaction, though, present, cannot thereafter retain the beneficial results of the transaction and at the time renounce the balance of the transaction or contract which to him proves unsatisfactory.").

7

In the present case, SEI received monthly accountings along with periodic profit and loss statements and had access to Pavlovsky's books. SEI admits reviewing the accountings. On the occasions when SEI made some objection, SEI admits the parties reached an agreement. No monies were paid to SEI until SEI reviewed and approved the accountings. Based on SEI's approval of the accountings throughout a twelve-year period, Pavlovsky paid SEI more than $800,000. [DE 52, p. 5; DE 53-2 ¶ 5]. Moreover, Pavlovsky continued to board and manage the horses for SEI, which it may have refused to do if SEI had demanded more money from the relationship. While the accountings may have been impeachable contemporaneously, they are not impeachable now. SEI acquiesced in all of the periodic accountings and may no longer complain.

The same result is supported by modern theories of equitable estoppel. A party asserting equitable estoppel must show the following elements:

> (1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts; (2) the estopped party is aware of these facts; (3) these facts are unknown to the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment.

*Hinshaw v. Hinshaw*, 237 S.W.3d 170, 173 (Ky. 2007). In *Hinshaw*, the mother of a child put her husband's name on the birth certificate and led her husband to believe for four years that he was the biological father of the child. During divorce proceedings, she disclosed a DNA test denying his paternity. The court found that her acts, language, and silence ensured that her husband would take no action earlier. It held she was estopped from denying him custody after he had developed a strong father-son relationship with the child.

Similarly, in the present case, SEI by its conduct led Dr. Pavlovsky to believe that it was satisfied with all of the accountings provided. When there was any objection, SEI reached an agreement regarding the disputed accounting. Dr. Pavlovsky relied on SEI's approval of the accountings before distributing any profits from the relationship and he also continued boarding and managing the band of horses. SEI's acts and silence ensured that Dr. Pavlovsky would take no

8

action for twelve years. SEI is now estopped from challenging the accuracy of the periodic accountings. *See also Old Republic Ins. Co. v. Begley*, 314 S.W.2d 552, 556 (Ky. 1958) ("An elementary principle of equitable estoppel is that one who knows or should know of a situation or a material fact is precluded from denying it or asserting the contrary where by his words or conduct he has misled or prejudiced another person or induced him to change his position to his detriment.").

SEI's reliance on unpublished decisions of other district courts does not warrant any discussion. Suffice it to say the facts here are distinguishable from those in *Shane v. Bunzl Distribution USA, Inc.*, 2004 U.S. Dist. LEXIS 27826 (W.D. Ky. 2004) and *Alexander Realty Capital, Inc. v. Laurel Cove Development, LLC*, 2009 U.S. Dist. LEXIS 17907 (M.D. Tenn. 2009).

SEI's claim of fraud also fails in light of its access to Pavlovsky's books and records and its approval of the accountings. Fraud cannot be based on facts that could have been discovered by the exercise of reasonable diligence. *Bryant v. Troutman*, 287 S.W.2d 918 (Ky. 1956).

### D. Pavlovsky's Counterclaim for Breach of Contract

SEI correctly argues that Pavlovsky has failed to provide evidence of damages for his counterclaim for breach of contract. In response to SEI's motion for summary judgment on this issue, Pavlovsky states: "He has been forced to incur tremendous expenses in defending himself against unsupported allegations in a foreign jurisdiction." [DE 53, p. 8]. Pavlovsky has failed to provide any authority or evidence that he would be entitled to recover his attorneys' fees or litigation costs. "[I]n the absence of a statute or a contract expressly providing for attorney's fees, they are not allowed." *Bernard v. Russell County Air Bd.*, 747 S.W.2d 610, 612 (Ky. Ct. App. 1987). *See also Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) ("We start with the premise that under the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees." Without damages, there is no cause of action. *City of New port v. Rawlings*, 289 Ky. 203, 158 S.W.2d 12, 14 (1941) ("there must be a juncture

of wrong and damage to give rise to a cause of action.). Accordingly SEI's motion for partial summary judgment on Defendant's counterclaim of breach of contract will be granted.

## III. CONCLUSION

**IT IS ORDERED** that:

A. Defendant's motion for summary judgment [DE 46] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** with respect to Plaintiff's allegations of fraud and breach of fiduciary duty regarding periodic accountings. The motion is **DENIED** on Defendant's claim of breach of contract and claim of breach of fiduciary duty regarding interests that were outside the scope of the Garat Agreement.

B. Plaintiff's motion for partial summary judgment [DE 51] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** on Defendant's Counterclaim for breach of contract. The motion is **DENIED** on Plaintiff's claim for breach of contract.

This October 18, 2011.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge